**No. 26-2723**

---

**In the United States Court of Appeals**
**FOR THE SEVENTH CIRCUIT**

**JUSTIN GAVERY, JOSEPH NOLAN, and PETER BERNEGGER**
**Plaintiffs-Appellants,**

**v.**

**DOUGLAS HAAG, TERRELL MARTIN, PATRICIA RUIZ-CANTU, KATHRYN Z. BLOCK, CITY OF MILWAUKEE, and PAULINA GUTIERREZ**
**Defendants-Appellees.**

---

On Appeal from the United States District Court for the
Eastern District of Wisconsin, the Honorable
William C. Griesbach, United States District Judge, Presiding
Case No. 2:25-cv-1970,

---

**DEFENDANTS-APPELLEES' BRIEF**

---

EVAN GOYKE
City Attorney

Clint B. Muche
Assistant City Attorney for the City of Milwaukee
State Bar No. 1131629
Attorneys for Defendants-Appellees

Milwaukee City Attorney's Office
800 City Hall
200 East Wells Street
Milwaukee, WI 53202
Telephone: (414) 286-2601
Fax: (414) 286-8550

**DISCLOSURE STATEMENT**

In accordance with Circuit Rule 26.1, the Defendants-Appellees submit the following:

(1) The full name of every party that the attorney represents in the case: Douglas Haag, Terrell Martin, Patricia Ruiz-Cantu, Kathryn Z. Block, Paulina Gutierrez, and City of Milwaukee.

(2) The names of all law firms whose partners or associates have appeared for the parties in the case or are expected to appear for the parties in this court: MILWAUKEE CITY ATTORNEY'S OFFICE, EVAN C. GOYKE, CITY ATTORNEY, represented by Assistant City Attorney Clint B. Muche.

(3) If the party to amicus is a corporation:

i) Identify all its parent corporations, if any: Not applicable.

ii) List any publicly held company that owns 10% or more of the parties' or amicus' stock: Not applicable.

(4) Attorney's signature: Date: October 5, 2026

s/ Clint B. Muche
CLINT B. MUCHE
Assistant City Attorney
Wisconsin State Bar No. 1131629

Please indicate whether you are *Counsel of Record* for the above-listed parties pursuant to Circuit Rule 3(d): Yes.

Address: 200 East Wells Street
City Hall 800
Milwaukee, WI 53202
Tel: 414-286-2601
Fax: 414-286-8550
Email: cmuche@milwaukee.gov

## TABLE OF CONTENTS

Page

DISCLOSURE STATEMENT ........................................ i

TABLE OF CONTENTS ........................................ ii-iii

TABLE OF AUTHORITIES ........................................ iv-vi

JURISDICTIONAL STATEMENT ........................................ 1-2

STATEMENT OF THE ISSUES ........................................ 2

STATEMENT OF THE CASE ........................................ 3-7

SUMMARY OF ARGUMENT ........................................ 7-8

STANDARD OF REVIEW ........................................ 8

ARGUMENT ........................................ 9

**I. THE SAC ESTABLISHES ARTICLE III STANDING, BUT PLAINTIFFS-APPELLANTS' CLAIMS FAIL ON THE MERITS.** ........................................ 11

A. Plaintiffs-Appellants Allege a Real Case or Controversy ........................................ 11

B. The SAC Fails to State a Plausible Claim for Relief. ........................................ 13

**II. THIS COURT SHOULD AFFIRM DISMISSAL ON THE MERITS, OR REVERSE AND REMAND TO CONSIDER DEFENDANT-APPELLEES' RULE 12(b)(6) ARGUMENTS.** ........................................ 20

CONCLUSION ........................................ 23

CERTIFICATE OF SERVICE ........................................ 24

CERTIFICATE OF COMPLIANCE ........................................ 25

## TABLE OF AUTHORITIES

**Cases** **Page**


*Booker-El v. Superintendent, Ind. State Prison*,
668 F.3d 896 (7th Cir. 2012) ........ 21-22

*Bridges v. Gilbert*,
557 F.3d 541 (7th Cir. 2009) ........ 17

*Brownmark Films, LLC v. Comedy Partners*,
682 F.3d 687 (7th Cir. 2012) ........ 16

*City of Chicago ex rel. Rosenberg v. Redflex Traffic Sys.*,
884 F.3d 798 (7th Cir. 2018) ........ 8

*Collier v. SP Plus Corp.*,
889 F.3d 894 (7th Cir. 2018) ........ 9

*Daugherty v. Harrington*,
906 F.3d 606 (2018) ........ 20

*Dix v. Edelman Fin. Servs., LLC*,
978 F.3d 507 (7th Cir. 2020) ........ 7

*Doyle v. Camelot Care Centers, Inc.*,
305 F.3d 603 (7th Cir. 2002) ........ 14

*Hanson v. LeVan*,
967 F.3d 584, 590 (7th Cir. 2020) ........ 14

*Kowalski v. Boliker*,
893 F.3d 987 (7th Cir. 2018) ........ 7

*Lujan v. Defenders of Wildlife*,
504 U.S. 555, 112 S. Ct. 2130 (1992)) ........ 11

*Matushkina v. Nielsen*,
877 F.3d 289 (7th Cir. 2017) ........ 9-12, 14, 21-22

*Orr v. Shicker*,
147 F.4th 734 (7th Cir. 2025) ........ 7

*Owsley v. Gorbett*,
960 F.3d 969 (7th Cir. 2020) ........ 22

*Paul v. Davis*,
424 U.S. 693, 96 S. Ct. 1155 (1976) ........ 14

*Peele v. Burch*,
722 F.3d 956, 960 (2013) ........ 17

*Petty v. Chicago*,
754 F.3d 416 (7th Cir. 2014) ........ 20

*Planned Parenthood Great Nw. v. Comm'r of the Ind. State Dep't of Health*,
2026 U.S. App. LEXIS 24930, ___ F.4th ____ (7th Cir. Aug. 18, 2026) ........ 13

*Protect Our Parks, Inc. v. Chicago Park Dist.*,
971 F.3d 722 (7th Cir. 2020) ........ 21

*Regains v. City of Chicago*,
918 F.3d 529 (7th Cir. 2019) ........ 8, 21

*Reget v. City of Lacrosse*,
595 F.3d 691 (7th Cir. 2010) ........ 19

*Sallenger v. City of Springfield, Ill.*,
630 F.3d 499, 504 (7th Cir. 2010) ........ 20

*Spokeo Inc. v. Robins*,
578 U.S. 330, 136 S. Ct. 1540, 1547 (2016) ........ 11

*Swanson v. Citibank, N.A.*,
614 F.3d 400 (7th Cir. 2010) ........ 7

*Tamayo v. Blagojevich*,
526 F.3d 1074 (7th Cir. 2008) ........ 18

*Thayer v. Chiczewski*,
705 F.3d 237 (7th Cir. 2012) ........ 8

*Thompson v. Army & Air Force Exch. Serv.*,
125 F.4th 831 (7th Cir. 2025) ........ 9

*Town of Castle Rock, Colo. v. Gonzalez*,
545 U.S. 748, 125 S. Ct. 2796 (2005) ........ 13

*Weitzenkamp v. Unum Life Ins. Co. of Am.*,
661 F.3d 323 (7th Cir. 2011) ....................21

*Wernsing v. Thompson*,
423 F.3d 732, 745 (7th Cir. 2005) ....................13

*Wis. Voter All. v. Millis*,
166 F.4th 627 (7th Cir. 2026) ....................17

*Yeftich v. Navistar, Inc.*,
722 F.3d 911 (7th Cir. 2013) ....................11

*Zablocki Merchs. Credit Guide Co.*,
968 F.3d 620 (7th Cir. 2020) ....................11, 15

**Federal and Relevant State Rules**

28 U.S.C. § 1291 ....................2

28 U.S.C. § 1331 ....................1

28 U.S.C. § 1343 ....................1

28 U.S.C. § 1391(b) ....................1

42 U.S.C. § 1983 ....................1, 3, 4, 6, 13

Circuit Rule 26.1 ....................i

Circuit Rule 3(d) ....................i

Fed. R. Civ. P. 12(b)(6) ....................1, 3, 7, 10

Wis. Stat. § 6.48 ....................5-6, 11, 13-19, 22

Wis. Stat. § 6.50 ....................5, 13-14, 16, 18, 19

## JURISDICTIONAL STATEMENT

Plaintiff-Appellant's jurisdictional statement is not accurate or complete. Defendant-Appellees state the following:

### I. District Court Jurisdiction.[1]

On November 24, 2025, Plaintiffs filed a civil action in Waukesha County Circuit Court seeking damages and equitable relief based upon alleged violations of their rights under the United States Constitution and 42 U.S.C. § 1983. (R. 1-2). The initial state court complaint raised federal claims only. (R. 1-2). (SA 4-9).

Defendant Douglas Haag removed the state court action to the U.S. District Court for the Eastern District of Wisconsin on December 15, 2025. (R. 1 and 4). (SA 10-11). Removal was proper pursuant to 28 U.S.C. § 1446(a). The district court had original jurisdiction over this suit pursuant to 28 U.S.C. §§ 1331 and 1343. Venue was a proper because Plaintiff's claims arose within the district court's geographic boundaries. *See* 28 U.S.C. § 1391(b).

On February 2, 2026, Defendant Haag filed a motion to dismiss and brief in support. (R. 11 and 12). In response, Plaintiffs filed their first amended complaint (FAC) on February 23, 2026. (R. 15). The FAC raised additional federal claims and named additional defendants. (*Id.*). Plaintiff Annette Kuglitsch was voluntarily dismissed and terminated from the suit on February 23, 2026. (R. 16 and 17).

Defendants filed a second motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), i.e., failure to state a claim upon which relief may be granted, and brief in support on March 9, 2026. (R. 20 and 21). On May 15, 2026, the district court issued an order granting Plaintiffs leave to file

[1] Citations to the record on appeal are to "R." followed by the district court docket number, and (where appropriate) a page number. Citations to the Plaintiffs' appendix are to "SA" followed by the page number. Citations to documents filed in this appeal are to "ECF No." followed by the Seventh Circuit docket number.

their second amended complaint (SAC) and denying Defendants' second motion to dismiss as moot. (R. 32). (SA 12-14). The SAC, i.e., the operative complaint, was docketed the same day. (R. 33).

Defendants' third motion to dismiss[2] and brief in support were filed on May 28, 2026. (R. 34 and 35). Plaintiffs filed a responsive brief in opposition on June 16, 2026, *see* R. 38, and Defendants filed a reply in further support on June 29, 2026. (R. 40). On August 7, 2026, the district court issued its decision and order granting Defendants' motion to dismiss. (R. 46). (SA 16-28).

**II. Appellate Jurisdiction.**

Jurisdiction in the U.S. Court of Appeals for the Seventh Circuit is based on 28 U.S.C. § 1291. The district court entered final judgment on August 7, 2026, *see* R. 47, SA 28, and Plaintiffs-Appellants timely filed notice of appeal on August 21, 2026. (R. 48).

**STATEMENT OF THE ISSUES**

1. Whether Plaintiffs-Appellants' SAC alleges Article III standing?

District Court Answer: No.

2. Whether Plaintiffs-Appellants' complaint states a plausible claim for relief?

District Court Answer: Did not reach.

3. Whether this Court may affirm dismissal on the merits?

District Court Answer: Did not reach.

[2] Defendants' third motion to dismiss is misidentified in the CM/ECF system as Defendants' "Second Motion to Dismiss." (R. 33). Defendants' motion is captioned, "Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint for Failure to State a Claim."

## STATEMENT OF THE CASE

**1. Procedural History:**

Plaintiffs Annette Kuglitsch and Peter Bernegger sued Defendant Douglas Haag in Waukesha County Circuit Court on November 24, 2025, raising federal claims only pursuant to 42 U.S.C. § 1983 (R. 1-2, 11-15). (SA 4-9). In particular, Plaintiffs alleged that Haag violated their civil rights under the Equal Protection Clause, retaliated in violation of the First Amendment, and infringed upon their Fourteenth Amendment right to procedural due process. (*Id.*).

On December 15, 2025, Haag removed Plaintiffs' lawsuit to the United States District Court for the Eastern District of Wisconsin. (R. 1 and 4). Haag then filed a motion to dismiss and brief in support thereof on February 2, 2026. (R. 11 and 12). On February 23rd, Plaintiffs filed an amended complaint raising new federal claims and naming additional individual defendants. (R. 15).

The first amended complaint (FAC) identifies Justin Gavery, Joe Nolan, and Peter Bernegger as Plaintiffs. (*Id.*, ¶ 10). Plaintiff Annette Kuglitsch was voluntarily dismissed at the same time. *See id.*, ¶ 12. *See also* R. 16. Douglas Haag, Terrell Martin, Patricia Ruiz-Cantu, Kathryn Z. Block, and the City of Milwaukee were named as defendants. (*Id.* ¶ 11). The FAC alleges five federal causes of action: (1) violation of procedural due process, *see id.*, ¶¶ 81-89; (2) First Amendment retaliation, *see id.*, ¶¶ 90-96b; (3) First Amendment right to petition, *see id.*, ¶¶ 97-101; (4) civil conspiracy, *see id.*, ¶¶ 102-107; and (5) municipal liability. (R. 15, ¶¶ 108-114). Plaintiffs filed two exhibits to the FAC, including a transcript of the hearing before the Milwaukee Election Commission (MEC). (R. 15-2).

Defendants-Appellees filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted and brief in support on March 9, 2026. (R.

20 and 21). Plaintiffs-Appellants sought leave to file a second amended complaint, *see* R. 25, which motion was granted on May 15, 2026. (R. 32). (SA 12-14). Thereafter, the second amended complaint (SAC), i.e., the operative complaint, was docketed. (R. 33).

Defendants-Appellees moved to dismiss the SAC on May 28, 2026. (R. 34 and 35). Plaintiffs-Appellants filed a brief in opposition on June 16, 2026, *see* R. 38, and Defendants-Appellees filed a response on June 29, 2026. (R. 40). On August 7, 2026, the district court granted Defendants-Appellees' motion to dismiss and entered judgment for the Defendants. (R. 46 and 47). (SA 16-27). The district court acknowledged that Defendants-Appellees moved to dismiss for failure to state a claim. (R. 46, 1-2, 6). (SA 16-17, 21). Instead, the district court found that Plaintiffs-Appellants' lacked standing to bring claims for due process violations, retaliation, and violations of equal protection under 42 U.S.C. § 1983. (R. 46, 12). (SA 27).

For that reason, the district court did not address *Monell* liability, Plaintiffs-Appellants' conspiracy claim, or Defendants-Appellees' qualified immunity defense because these claims "presuppose a constitutional violation." (R. 46, 12). (SA 27). The district court likewise did not address Defendants-Appellees arguments on the merits relative to Due Process, First Amendment retaliation, and the Equal Protection Clause.

**2. Factual History:**[3]

The causes of action pleaded in the SAC are downstream from Plaintiffs-Appellants' efforts to bring a "multi-statute list-maintenance" voter registration challenge before the MEC. (R. 33, ¶ 8). Defendants Haag, Martin, and Ruiz-Cantu were at all relevant times MEC

[3] Defendant-Appellees' motion to dismiss alleged Plaintiffs failed to state a claim pursuant to Fed. R. Civ. P. Rule 12 (b)(6). Defendant-Appellees will briefly summarize the allegations set forth in the operative complaint, which must be taken as true, but <u>do not</u> admit that these allegations ***are*** true <u>and</u> reserve the right to respond and contest each and every allegation within the complaint in the event the Court remands this case to the District Court for further proceedings.

Commissioners. (*Id.*, ¶¶ 41-43). Defendant Gutierrez was MEC's Executive Director. (*Id.*, ¶ 44). Defendant Block, an Assistant City Attorney, was MEC's legal advisor. (*Id.*, ¶ 45).

Plaintiffs-Appellants assert that state and federal statutes impose obligations upon local election officials to keep voter registration lists "clean." (R. 33, ¶ 48). These statutes require local election officials to "confirm[] addresses that appear incorrect or outdated." (*Id.*, ¶ 49). Wis. Stat. § 6.50 authorizes municipalities to obtain United States Postal Service (USPS) address data directly for list maintenance purposes. (*Id.*, ¶ 52). Plaintiffs-Appellants submitted ten worksheets comparing voter registration address data to address data privately obtained from USPS which purportedly identified thousands of inaccuracies and irregularities. (*Id.*, ¶¶ 65-66).

Wis. Stat. § 6.48 establishes the procedure by which private individuals may challenge the qualifications of another registered voter. (*Id.*, ¶ 57). Under state law, individual challengers must establish beyond a reasonable doubt that the challenged voter is ***not*** qualified. (*Id.*). Plaintiff-Appellants assert that Wis. Stat. § 6.50 creates a separate, individual right to "request[] list-maintenance action" which is separate from and not governed by Wis. Stat. § 6.48. (*Id.*, ¶ 51; *see also id.*, ¶ 57).[4]

The district court found that the SAC alleges that "[o]n multiple occasions between March 27, 2024, and March 26, 2025, one or more plaintiffs appeared in hearings before the MEC to present evidence challenging the City's voter registration lists." (R. 46, 2). (SA 17). And that, "Plaintiffs allege that Defendants violated their rights by invoking [Wis. Stat.] § 6.48 in rejecting their claims. Instead, Plaintiffs allege that [Wis. Stat.] § 6.50 provides the standard by which their proffered evidence should have been assessed and the procedure that governed it." (R. 46., 8).

[4] Plaintiffs-Appellants also assert that the claims raised by the SAC do not depend upon the existence of a privately enforceable right to compel local election officials to undertake list-maintenance procedures. (R. 33, ¶ 129.

(SA 23). In short, Plaintiffs argue that "the manner in which Milwaukee election officials addressed, or failed to address, the evidence they attempted to offer by itself constitutes a violation of their constitutional rights." (*Id.*).

The SAC alleges in Count I that the individual defendants (i.e., Haag, Martin, Ruiz-Cantu, Gutierrez, and Block) are liable pursuant to 42 U.S.C. § 1983 for violating Plaintiffs-Appellants' procedural due process rights. (R. 33, ¶¶ 126-138). Plaintiffs-Appellants claim that city election officials denied them due process by applying the statutory framework applicable to individual elector challenges under state law, i.e., Wis. Stat. § 6.48, when they asserted that other statutes and standards applied. (*Id.*, ¶¶ 130-131). Count II alleges that Defendant-Appellees' invocation of the statutory framework applicable to individual elector challenges under state law was retaliatory and violated their right to petition. (*Id.*, ¶¶ 132-146).

Count III is related to Count I. Whereas Plaintiffs Gavery and Nolan are registered Milwaukee voters who appeared before the MEC, Bernegger is not a Milwaukee voter and did not appear before the MEC. (R. 33, ¶¶ 24-39). Plaintiffs-Appellants allege that Bernegger suffered reputational harm when Defendants-Appellees "publicly characterized [his] work product as inaccurate, wrong, flawed, and unreliable without ever reviewing it." (Id., ¶¶ 38, 147-158). The issue is whether those allegations plausibly establish a distinct deprivation of a protected liberty or property interest, including under a stigma-plus theory.

Count IV alleges a class-of-one Equal Protection violation. (R. 33, 38). Plaintiffs-Appellants assert that "[n]o rational basis exist[s]" to treat address data obtained directly from the United States Postal Service differently than address data collected by private citizens. (Id., ¶ 157; see also id., ¶¶ 154-159). In Count V, Plaintiffs-Appellants claim that the City of Milwaukee is directly liable to them because the city has an official policy of rejecting "list-maintenance" voter

challenges, and/or a custom or practice of "recasting list-maintenance submissions under an inapplicable [§ 6.48] challenge framework," and/or city training and supervision relative to list-maintenance challenges was constitutionally deficient. (R. 33, ¶ 161) *See also id*., ¶¶ 160-165).

Finally, Count VI claims that Defendants-Appellees conspired to deprive them of their civil by "reach[ing] an express or implied understanding that Plaintiffs' … submissions would not receive a genuine merits review and that the hearings would instead be handled under a framework that ensured denial." (R. 33, ¶ 166). *See also id.*, ¶¶ 166-171.

## SUMMARY OF ARGUMENT

Plaintiffs-Appellants contend that this action, which asserts federal claims only, must be remanded to state court under 28 U.S.C. § 1447(c) because the district court concluded that Article III standing was lacking. Defendants-Appellees moved to dismiss under Rule 12(b)(6), and this Court may affirm on the merits. (R. 34, 40).

This Court may affirm dismissal on any basis supported in the record. *Dix v. Edelman Fin. Servs., LLC*, 978 F.3d 507, 513 (7th Cir. 2020) (citing *Kowalski v. Boliker*, 893 F.3d 987, 994 (7th Cir. 2018)). It is well-settled that to defeat a motion to dismiss based on Fed. R. Civ. P. 12(b)(6), the plaintiff must state a claim for relief that is plausible on its face. *Orr v. Shicker*, 147 F.4th 734, 740 (7th Cir. 2025), *reh'g denied*, No. 24-1171, 2025 WL 3060301 (7th Cir. Oct. 31, 2025). If the complaint does not "present a story that holds together," then dismissal on the merits is warranted. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

The distinction between standing and failure to state a claim may be unclear, particularly when a procedural due process claim turns on the existence of a protected property interest. The district court treated a merits deficiency as an Article III standing defect. This Court should affirm on the merits because the SAC alleges Article III standing but does not state a claim for relief.

The SAC alleges concrete, particularized injuries traceable to Defendants-Appellees and seeks compensatory damages for alleged past constitutional deprivations. Those allegations are sufficient to establish injury in fact, causation, and redressability for Article III purposes. But Plaintiffs-Appellants' claims are legally deficient. The procedural due process claim fails absent a legally protected entitlement to compel the requested election list-maintenance process. The Petition Clause and retaliation claim are implausible as alleged, and the Equal Protection claim likewise fails. Counts V (Monell) and VI (conspiracy) are derivative and cannot survive absent an underlying constitutional violation.

Plaintiff-Appellants' federal claims cannot succeed in any forum because they do not state a claim. This Court may affirm on the fully briefed Rule 12(b)(6) grounds. If it declines to do so, the appropriate alternative is a remand to the district court to consider those grounds in the first instance.

This Court should affirm on the fully briefed Rule 12(b)(6) grounds. Alternatively, it should reverse the standing ruling and remand to the district court with instructions to consider Defendants-Appellees' Rule 12(b)(6) arguments.

## STANDARD OF REVIEW

This Court reviews *de novo* the granting of a motion to dismiss. *City of Chicago ex rel. Rosenberg v. Redflex Traffic Sys.*, 884 F.3d 798, 802 (7th Cir. 2018) (noting dismissal for lack of subject matter jurisdiction is reviewed *de novo*); *Regains v. City of Chicago*, 918 F.3d 529, 533 (7th Cir. 2019) ("[A] district court's grant of a Rule 12(b)(6) motion to dismiss" is reviewed *de novo*.). This Court may affirm on any ground supported in the record supports provided that (a) it was adequately raised in the district court and (b) the appellant had a fair opportunity to contest the issue. *Id.* (citing *Thayer v. Chiczewski*, 705 F.3d 237, 247 (7th Cir. 2012)).

## ARGUMENT

Plaintiffs-Appellants' argument rests almost entirely on *Collier v. SP Plus Corp.*, 889 F.3d 894 (7th Cir. 2018) and *Thompson v. Army & Air Force Exch. Serv.*, 125 F.4th 831 (7th Cir. 2025). This appeal presents circumstances more like *Matushkina v. Nielsen*, 877 F.3d 289 (7th Cir. 2017).

In *Collier*, the plaintiffs filed a class-action complaint in state court alleging a violation of a federal statute. *See* 889 F.3d at 895. The defendant removed to federal court based on federal-question jurisdiction and then moved to dismiss for lack of standing. *Id.* In response, the plaintiffs conceded that they lacked Article III standing and moved the district court to remand the case back to state court pursuant to 28 U.S.C. § 1447(c). *Id.* The district court found plaintiffs had not alleged an injury-in-fact and dismissed for lack of standing. *Id.* at 896.

In *Thompson*, the parties agreed that the district court lacked subject matter jurisdiction over the plaintiff's claim. *See* 125 F.4th at 832. The defendant, an instrumentality of the United States Army and Air Force, had removed plaintiff's state-court civil action based on 28 U.S.C. § 1442(a)(1).[5] *Id.* at 833. The plaintiff then moved to remand to state court, while the defendant moved to dismiss for lack of standing. *Id.*

The present case is distinguishable from *Collier* and *Thompson*. Unlike the defendants in *Collier* and *Thompson*, Defendants-Appellees herein did not move to dismiss based on lack of

[5] "(a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place where it is pending: (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue."

standing—but for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).[6] Second, unlike the plaintiffs in those cases, Plaintiffs-Appellants never conceded that they lacked standing.

This Court has previously recognized that "[t]he line between a lack of standing and a failure to state a claim for relief on the merits can be a fine one." *Matushkina*, 877 F.3d at 292. In *Matushkina*, plaintiffs formally sought relief under the Administrative Procedure Act, i.e., 5 U.S.C. §§ 551-559. *Id.* at 291. But, as a practical matter, plaintiff's true goal was to overturn a prior determination by Customs and Border Protection (CBP) that Matushkina was inadmissible to the United States. *Id.* The district court dismissed for lack of standing and plaintiffs appealed. *Id.* at 292. On appeal, this Court observed that "[t]he basic problem is that the lead plaintiff does not have a legal right enforceable in federal court[.]" *Id.* Thereafter, the Court affirmed dismissal on the merits rather than for lack of standing. *Id.* at 291.

This case is similar to *Matushkina* because Plaintiffs-Appellants seek relief that they are not entitled to as a matter of law. As in *Matushkina*, the SAC pleads legal theories only indirectly related to Plaintiffs-Appellants' true goal. *See* R. 33 ¶ 184 ("Prospective injunctive relief requiring: (i) future evidence-based list-maintenance submissions to be evaluated under the legally applicable framework, rather than automatically recast under Wis. Stat. § 6.48[.]"). And, as in that case, Plaintiffs-Appellants cannot obtain relief in any forum under those theories. *Matushkina*, 887 F.3d at 297 ("[W]here a jurisdictional dismissal effectively bars relief on the merits in any judicial forum … modifying the dismissal from jurisdiction to merits makes no practical difference.").

[6] Defendants-Appellees did point out that Plaintiff Bernegger lacked standing.

## I. THE SAC ESTABLISHES ARTICLE III STANDING, BUT PLAINTIFFS-APPELLANTS' CLAIMS FAIL ON THE MERITS.

### A. <u>Plaintiffs-Appellants Allege a Real Case or Controversy</u>.

Standing has three essential elements. To establish jurisdictional standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that [injury] is likely to be redressed by a favorable judicial decision." *Spokeo Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130 (1992)).

The first element, injury in fact, requires "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural and hypothetical." *Matushkina*, 877 F.3d 289, 292 (7th Cir. 2017) (internal quotations and citations omitted). Notably, plaintiff's alleged injury need not rise to the level of a constitutional right to satisfy the injury-in-fact element of standing. *Id.* at 293. (citation omitted).

The SAC alleges that Defendants-Appellees violated Plaintiffs-Appellants' procedural due process rights, interfered with protected activity and retaliated against them for petitioning, treated them differently in violation of the Equal Protection Clause, and conspired to deprive them of civil rights. (R. 33). For purposes of the Rule 12(b)(6) motion, the Court assumes well-pleaded factual allegations are true, but need not accept legal conclusions. *Zablocki Merchs. Credit Guide Co.*, 968 F.3d 620, 623 (7th Cir. 2020) (citing *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013)).

Plaintiffs-Appellants base this lawsuit on alleged past actions by Defendants-Appellees. Thus, the alleged injuries are actual rather than hypothetical. This description addresses Article III standing only; Defendants-Appellees dispute the allegations and their legal significance outside the Rule 12(b)(6) posture.

Finally, the alleged injuries are particularized (at least as to Plaintiff Nolan and Plaintiff Gavery). The SAC alleges that Nolan and Gavery personally appeared before the MEC on various dates to present voter-challenge data. If MEC's responsive action violated their First or Fourteenth Amendment rights, Nolan and Gavery were affected in a personal and individual way. Although Defendants-Appellees argued below that Bernegger, who did not appear before MEC, lacked standing this is irrelevant because "[w]here at least one plaintiff has standing, jurisdiction is secure[.]" *Matushkina*, 877 F.3d at 293 (citing *Ezell v. City of Chicago*, 651 F.3d 684, 696 n.7 (7th Cir.2011)).

In *Matushkina*, the district court found that the plaintiff lacked standing because she "ha[d] no right of entry into the United States, and no cause of action to press in furtherance of her claim for admission." *See* 877 F.3d at 292. This Court reasoned that there ***was*** standing to bring suit because the plaintiff's interest in her admissibility was apparent and an enforceable right of entry is not a prerequisite to standing. *See id.* In the same vein, Gavery and Nolan's interests in petitioning without retaliation and in receiving procedural due process and equal protection are plainly obvious. As in *Matushkina*, the flaw in this suit is that Plaintiffs-Appellants cannot plausibly show legal entitlement to relief—not that they have failed to allege a real case or controversy.

Plaintiffs claim that the MEC should have treated their voter challenge differently, that MEC applied the wrong legal standard to their challenge, and that treating privately-collected address information differently than information provided directly to MEC by USPS violates the Equal Protection Clause. (R. 33). Causation is straightforward. Plaintiffs' alleged injuries are causally connected to Defendants-Appellees rather than some unidentified third party.

The SAC seeks compensatory and punitive damages, costs, and fees for alleged interference with Plaintiffs-Appellants' right to petition, denial of procedural due process, unequal treatment, and conspiracy. (R. 33, ¶¶ 173-175, 185). Monetary damages can redress a past injury. *Wernsing v. Thompson*, 423 F.3d 732, 745 (7th Cir. 2005) ("[I]njuries compensable in monetary damages can always be addressed by a court judgment."). Thus, the request for damages satisfies redressability for Article III purposes. Although Plaintiffs-Appellants also seek declaratory and equitable relief concerning future voter challenges, *see* R. 33, ¶¶ 176-184, additional requests do not defeat standing where the requested relief would redress at least some alleged injuries. *Planned Parenthood Great Nw. v. Comm'r of the Ind. State Dep't of Health*, Appeal No. 24-2219, 2026 U.S. App. LEXIS 24930, at *18 (7th Cir. Aug. 18, 2026) (citation omitted).

**B. The SAC Fails to State a Plausible Claim for Relief.**

The SAC fails to state a claim not because Plaintiffs-Appellants lack a real case or controversy, but because the allegations do not establish the elements of the constitutional claims asserted. The problem is the fit between the constitutional provisions invoked and the facts alleged. This is a merits issue, not a jurisdictional one.

Count I alleges a procedural due process violation. (R. 33, 30-35). To state a § 1983 procedural due process claim, a plaintiff must identify an underlying property interest allegedly abridged without due process. *Town of Castle Rock, Colo. v. Gonzalez,* 545 U.S. 748, 756 (2005) ("The procedural component of the Due Process Clause does not protect everything that might be described as a benefit[.] To have a property interest in a benefit, a person … must … have a legitimate claim of entitlement to it.") (internal quotation marks and citation omitted).

The SAC fails to identify any applicable private right to challenge voter registrations besides Wis. Stat. § 6.48. Plaintiff-Appellants assert that the Defendants-Appellees violated procedural due process by applying Wis. Stat. § 6.48's legal standard to their voter "list-

maintenance" challenge. However, Wis. Stat. § 6.50, which concerns election officials' list maintenance obligations, does not explicitly create a private right to enforcement, *see* R. 35, 5-7, nor do any of the other statutes relating to the administration of elections cited in the SAC. (R. 40, 6-9).

Count I necessarily must fail because Plaintiffs-Appellants cannot identify a statutory entitlement to privately challenge voter registrations in the manner they did other than Wis. Stat. § 6.48. For that reason, the procedural guarantees of the Due Process Clause do not apply to their submission(s). In other words, the claim fails as a matter of law—not jurisdiction. Furthermore, even if Wisconsin courts found that Wis. Stat. § 6.50 ***does*** create a private cause of action in the future, Defendants-Appellees would still be entitled to judgment as a matter of law in this case based on qualified immunity because the right was not clearly established at the relevant time. *Hanson v. LeVan*, 967 F.3d 584, 590 (7th Cir. 2020).

Count III is styled as a separate cause of action but functionally relates to Count I. Plaintiffs-Appellants invoke *Paul v. Davis*, 424 U.S. 693 (1976), to assert that Bernegger suffered a due process injury from alleged reputational harm. But reputational harm alone does not establish a protected liberty interest. *Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 617 (7th Cir. 2002) ("It is well-settled that an individual has no cognizable liberty interest in his reputation; consequently, when a state actor makes allegations that merely damage a person's reputation, no federally protected liberty interest has been implicated."). A plaintiff must plausibly allege reputational harm ***plus*** an alteration of legal status. *Id.*

Count III does not state a distinct due process claim because the SAC does not plausibly allege any alteration of Bernegger's legal status. In any event, Bernegger's individual standing

does not affect whether Gavery and Nolan may pursue their own claims. *Matushkina*, 877 F.3d at 293 (citation omitted).

The Court should affirm dismissal of Counts I and III on the merits because the Due Process Clause protects recognized property or liberty interests created under state law, and Plaintiffs-Appellants identify no private statutory right to pursue the requested list-maintenance process.

Count II alleges that Defendants-Appellees infringed upon Plaintiffs-Appellants' protected petitioning activity and retaliated against them for petitioning. (R. 33, 35-37).[7] The SAC summarizes this claim as follows:

> Defendants took adverse actions against Plaintiffs' protected petitioning activity; recharacterizing Plaintiffs' submissions under the wrong statute before Plaintiffs had spoken; announcing predetermined denials before reviewing any evidence; convening an unauthorized closed session; returning with uniform scripted language; and publicly branding Plaintiffs' evidence as inaccurate and flawed without review, in formal government proceedings, before third parties.

(R. 33, ¶ 142).

At the motion to dismiss stage the Court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in their favor, but it ***does not*** need to accept the nonmovant's legal conclusions. *Zablocki Merchs. Credit Guide Co.*, 968 F.3d at 623 (citation omitted) Setting aside Plaintiffs-Appellants' conclusory language, the SAC complains that Defendants-Appellees considered Plaintiffs-Appellants' challenge as an individual voter challenge pursuant to Wis. Stat. § 6.48, and opined that Plaintiffs' evidence did not meet the statutory burden applicable to individual challenges, before consulting with legal counsel in closed session and announcing Plaintiffs-Appellants' challenge was denied.

[7] As with Count I, Bernegger's connection to the allegations in Count II is indirect. Whereas Gavery and Nolan personally appeared before the MEC, Bernegger prepared the underlying dataset Gavery and Nolan's submission was based upon, *see* R. 33, ¶ 65, and sent correspondence to Defendant Gutierrez identifying perceived address irregularities. (*Id.*, ¶ 87).

The SAC alleges that Gavery "was a lead submitter and presenter at the October 30, 2024 and March 26, 2025 hearings," *see* R. 33, ¶ 25; that Nolan was "the principal evidentiary witness at the October 30, 2024 and March 26, 2025 hearings," *see id.*, ¶ 29; that "Commissioners Martin, Haag, and Ruiz-Cantu, Executive Director Gutierrez, [and] Defendant Block" attended the October 2024 hearing, *see id.*, ¶ 79; that Commissioner Martin read the text of Wis. Stat. § 6.48(2) into the record at the outset of the October hearing, *see id.*, ¶ 81; that Plaintiff-Appellants again appeared before the MEC in March 2025, *see id.*, ¶ 91; and that at the outset of the March hearing Commissioner Martin read the same "inapplicable Wis. Stat. § 6.48(2) framework into the record," (*Id.*, ¶ 92). Plaintiffs-Appellants additionally allege that Nolan "cited Wis. Stat. § 6.50(8) … and argued this provision … removes the beyond-a-reasonable-doubt standard" at both the October and March hearings. (*Id.*, ¶¶ 84 and 93).

The SAC alleges that the March hearing was audio-recorded and that a transcript was prepared. (R. 33, ¶ 91). Plaintiff-Appellants filed a transcript. (R. 15-2 (the "Transcript")). The Court may consider documents attached to the complaint or incorporated by reference, including documents central to the complaint and concededly authentic. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). Moreover, exhibits are part of the pleadings for all purposes. *Id*.

The Transcript reflects that after Commissioner Martin read the statutory framework applicable to individual voter challenges and Nolan responded that his claims were governed by Wis. Stat. § 6.50(8), the hearing focused on the applicable legal standard and the remedy Plaintiffs-Appellants sought. (R. 15-2, 10:14-24:17). The Commissioners then voted to enter closed session pursuant to Wis. Stat. § 19.85(1)(a) and (g). (Id., 24:18-25:7).

Under Wisconsin law, a closed session may be held for deliberating a matter being heard before that body, *see* Wis. Stat. § 19.85(1)(a), and for the purpose of conferring with legal counsel relative to ongoing and/or potential litigation. *See* Wis. Stat. § 19.85(1)(g). Certainly, advice about the legal standard applicable to a particular proceeding and whether a proposed course of action is lawful falls within the ambit of these provisions. When the MEC reconvened in open session, the Commissioners voted deny Plaintiffs-Appellants' voter registration challenge under Wis. Stat. § 6.48. (*Id.*, ¶ 107).

The SAC does not state a colorable Petition Clause claim. It alleges that Plaintiffs-Appellants submitted multiple list-maintenance challenges to the MEC and that Gavery and Nolan addressed the MEC, and it ***does not*** allege that they were prevented from doing so. The Petition Clause guarantees a right of access, not a right to a particular response or official consideration. *Wis. Voter All. v. Millis* ("*Millis*"), 166 F.4th 627, 636 (7th Cir. 2026). As in *Millis*, MEC's response to Plaintiffs-Appellants' voter registration challenge petition "could not create a constitutional injury" because the MEC did not owe them any response at all. *Id.*, 166 F.4th at 636.

The SAC does not plausibly allege that Nolan or Gavery were denied access to the MEC or prohibited from presenting their concerns. Dissatisfaction with the outcome, including disagreement with the MEC's application of state law, does not itself state a First Amendment claim.

Plaintiffs-Appellants' retaliation theory is likewise deficient. A retaliation claim requires adverse action imposed because of protected activity. *See, e.g., Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009) (plaintiff alleged he suffered retaliation through delays in processing his mail, subsequent harassment by staff, and other discipline). The SAC does not allege any adverse consequence followed Plaintiffs-Appellants' submission other than the challenge itself was

denied. Actionable retaliation refers to punishment imposed for engaging in legally protected activity. *See* https://www.law.cornell.edu/wex/retaliation (last accessed May 26, 2026). Thus, the Court has explained that adverse consequences that follow "on the heels of" protected activity may show unconstitutional retaliation. *Peele v. Burch*, 722 F.3d 956, 960 (2013). Here, the SAC does not identify any adverse consequences beyond the fact of denial and the reasons given therefore.

Moreover, the specific facts alleged in support of Plaintiffs-Appellants' retaliation theory are contradicted by the pleadings. The basic fact allegation that the MEC convened proceedings to consider Plaintiffs' challenge pursuant to Wis. Stat. § 6.50 is plainly contradicted by the SAC itself. (R. 33, ¶ 8 ("Defendants deliberately recharacterized Plaintiffs' multi-statute list-maintenance submission … as a narrow individual voter challenge under Wis. Stat. § 6.48)). The Transcript reflects that Bernegger was never identified as the source of the petitioner's data during the hearing; that no defendant ever described that dataset as "inaccurate," "wrong," "flawed," or "unreliable;" and that no defendant ever referred to or characterized the quality of the Titan methodology. (R. 15-2).

The SAC characterizes Nolan and Gavery's appearance before the MEC as a "sham." (R. 33, ¶¶ 99-107). Because this conclusion depends upon proving that the MEC convened a hearing to adjudicate Plaintiffs-Appellants' list-maintenance submission under state statutes other than Wis. Stat. § 6.48, "it would be necessary to contradict the complaint in order to prevail on [that claim] the merits." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008) (citation omitted). *Compare* R. 33, ¶ 8 ("Defendants deliberately recharacterized Plaintiffs' multi-statute list-maintenance submission … as a narrow individual voter challenge under Wis. Stat. § 6.48"), *with* R. 33, ¶¶ 99-107). The Court should affirm dismissal of Count II on the merits because Defendant-

Appellees did not prevent or impede Plaintiffs' access to MEC and the SAC does not allege any retaliatory consequences beyond denial of their challenge.

The crux of Plaintiffs' Count IV, the Equal Protection claim, is their assertion that (1) "Defendants applied the § 6.48 affidavit and beyond-a-reasonable-doubt framework to Plaintiffs' USPS-grounded list-maintenance submissions while [city officials] routinely rely on USPS-derived information … without imposing the same adjudicatory burden on themselves[,]" *see* ECF No. 33, ¶ 156,[8] and that (2) "[n]o rational basis existed to subject Plaintiffs' submissions to a uniquely burdensome framework while treating equivalent USPS-based information as usable when processed internally by election officials." (ECF No. 33, ¶ 157).

To establish a class-of-one equal-protection claim, the plaintiff must show that (1) he or she was intentionally treated differently from others similarly situated in all relevant respects; and (2) no rational basis for such difference in treatment existed. *Reget v. City of Lacrosse*, 595 F.3d 691, 695 (7th Cir. 2010). The SAC fails on both prongs.

As to the first prong, the relevant comparison is between Plaintiffs-Appellants' privately assembled dataset and the City's direct use of USPS-derived information. Those are not equivalents, much less similarly situated in all relevant respects, because information obtained directly from the source may differ from a third-party compilation in provenance, timing, completeness, methodology, and the need for verification. Those differences also supply a rational basis for treating a privately assembled submission differently from information obtained directly by the City from USPS. Regarding the second, the need to verify privately-collected data illustrates

---

[8] There is no record evidence establishing that MEC seeks, obtains, or relies upon postal data. At most, the Court could conclude that Wis. Stat. § 6.50(8) authorizes the City of Milwaukee to do so. Nonetheless, because the Court must presume Plaintiffs' fact allegations are true at the motion to dismiss stage Defendants will likewise accept this assertion as true for purposes of appeal, but <u>do</u> <u>not</u> admit that it *is* true and reserve the right to respond to each and every complaint allegation if required to file an Answer in the future.

that Plaintiffs-Appellants' privately assembled dataset is not similarly situated with the City's alleged direct use of USPS data ***and*** provides a rational basis for differential treatment.

A third-party compilation may require validation because data sources can differ in timing, completeness, and methodology. The Court need not resolve hypothetical processing scenarios to recognize that these distinctions can provide a rational basis for different treatment at the pleading stage. The MEC could rationally conclude that verifying the provenance, ongoing accuracy, completeness, and methodology of Plaintiffs-Appellants' dataset was more burdensome than obtaining information directly from USPS at regular intervals for statutory list-maintenance work.

The Court should affirm dismissal of Count IV on the merits because Plaintiffs-Appellants' privately assembled submission is not similarly situated to information obtained directly from USPS by the City and the pleaded circumstances supply a rational basis for any different treatment.

"A municipality cannot be liable under *Monell* when there is no underlying constitutional violation." *Petty v. Chicago*, 754 F.3d 416, 424 (7th Cir. 2014) (quoting *Sallenger v. City of Springfield*, *Ill.*, 630 F.3d 499, 504 (7th Cir. 2010)). Likewise, a conspiracy claim requires plausible evidence that the plaintiff was deprived of a constitutional right. *Daugherty v. Harrington*, 906 F.3d 606, 612 (2018). Because the SAC does not plausibly allege a primary constitutional violation, the derivative municipal-liability and conspiracy claims fail.

The Court should affirm dismissal of Counts V (*Monell*) and Count VI (civil conspiracy) on the merits, not based on jurisdiction, because the SAC does not plausibly show an underlying constitutional violation occurred and therefore these claims necessarily fail.

## II. THIS COURT SHOULD AFFIRM DISMISSAL ON THE MERITS, OR REVERSE AND REMAND TO CONSIDER DEFENDANT-APPELLEES' RULE 12(b)(6) ARGUMENTS.

This Court reviews *de novo* a district court's granting of a motion to dismiss and may affirm on any basis supported by the record. *See, e.g., Redflex Traffic Sys.*, 884 F.3d at 802; *Regains*, 918

F.3d at 533. An "appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon [a] matter overlooked or ignored by it." *Weitzenkamp v. Unum Life Ins. Co. of Am.*, 661 F.3d 323, 332 (7th Cir. 2011) (cleaned up). Nonetheless, generally an appellee may not attack a decree to enlarge its own rights or lessen the rights of its adversary without filing a cross-appeal. *Matushkina*, 877 F.3d at 296-297.

However, this Court has also recognized that "[t]he line between lack of standing and a failure to state a claim for relief on the merits can be a fine one[.]" *Id.* at 292. This Court has observed that "where the existence of a protected property interest is an element of the claim, deciding whether the interest exists virtually always goes to the merits rather than standing." *Protect Our Parks, Inc. v. Chicago Park Dist.*, 971 F.3d 722, 736 (7th Cir. 2020) (citation omitted). Indeed, "it is not unusual for the distinction between standing and the merits to cause conceptual trouble when a plaintiff alleges the deprivation of a dubious property or liberty interest." *See id.* (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012). *See also Matushkina*, 877 F.3d at 292 (noting that when a "plaintiff does not have a legal right enforceable in federal court … it is not always obvious … whether the problem is lack of standing or lack of a viable claim on the merits.").

The plaintiff in *Booker-El* brought a procedural due process claim alleging that prison officials had misappropriated the inmates' recreation fund. *See* 668 F.3d at 898. This Court concluded that the plaintiff had standing to assert his claim even though his suit failed on the merits because state law did not confer a protected property interest in the fund to the plaintiff. *Booker-El*, 668 F.3d at 900-901.

Plaintiffs-Appellants procedural due process claim is on all fours with *Booker-El.* Here, as in *Booker-El*, Plaintiff-Appellants' procedural due process claim rests upon a dubious property interest in compelling local election officials to de-register eligible voters outside the statutory process provided in Wis. Stat. § 6.48. Whereas the district court in *Booker-El* properly dismissed the plaintiff's suit for failure to state a claim, here the district court did not reach Defendants-Appellees merits argument and dismissed for lack of standing instead.

In *Matushkina*, the Court recognized an exception to the cross-appeal rule based on the "fine line" between standing and the merits. *See* 877 F.3d at 296-97. The Court bypassed the cross-appeal procedural requirement after demonstrating that standing was secure despite the plaintiff's lack of a substantive right, noting that the district court had conflated standing with the merits, and concluding that "modifying the dismissal from jurisdiction to the merits [made] no practical difference" because the plaintiff could not obtain relief in any judicial forum. *Id.* at 297.

The present suit falls within the reasoning of *Matushkina*. Plaintiffs-Appellants' federal claims cannot succeed on the merits in any forum because they do not plausibly allege the essential elements of their claims. That Plaintiffs-Appellants cannot obtain relief "concerns the merits rather than … jurisdiction." *Owsley v. Gorbett*, 960 F.3d 969, 971 (7th Cir. 2020) (citation omitted). Defendants-Appellees fully presented their merits arguments below and Plaintiffs-Appellants had ample opportunity to respond. This Court should affirm dismissal on the merits.

But if this Court does not affirm on the merits, it should reverse the standing ruling and remand to the district court to consider Defendants-Appellees' Rule 12(b)(6) arguments in the first instance. The district court acknowledged that the motion was brought under Rule 12(b)(6) but did not reach those arguments after dismissing for lack of standing. (R. 46, 1-2, 6; SA 16-17, 21).

## CONCLUSION

Defendants-Appellees moved to dismiss under Rule 12(b)(6), and the issue was fully briefed below. Although the district court dismissed for lack of standing, this Court may affirm on any basis supported by the record. Plaintiffs-Appellants' allegations suffice for Article III standing, but they do not plausibly state a claim for relief. The Court should affirm on the merits or, alternatively, reverse the standing ruling and remand for the district court to consider the Rule 12(b)(6) arguments.

Dated and signed at Milwaukee, Wisconsin this 5th day of October, 2026.

EVAN C. GOYKE
City Attorney

s/ Clint B. Muche
CLINT B. MUCHE
Assistant City Attorney
WI State Bar No. 1131629

*Attorneys for Defendants-Appellees*

ADDRESS:
200 East Wells Street, Room 800
Milwaukee, WI 53202
Telephone: (414) 286-6192
Fax: (414) 286-8550
Email: cmuche@milwaukee.gov

1032-2024-1336/******

**CERTIFICATION OF SERVICE**

I hereby certify that on October 5, 2026, I electronically filed the foregoing in searchable PDF format with the Clerk of Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system and placed true copies of *Defendants-Appellees' Brief* into securely closed envelopes at City Hall in the City of Milwaukee, and mailed them postage prepaid, addressed to:

Justin Gavery
730 N. Plankinton Avenue
Milwaukee, WI 53203

Joseph Nolan
2909 S. 52nd Street
Milwaukee, WI 53219

Peter Bernegger
1806 Brynnwood Trace
New London, WI 54961

Dated and signed at Milwaukee, Wisconsin this 5th day of October, 2026.

s/Clint B. Muche
CLINT B. MUCHE

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I certify that:

This brief complies with the type-volume limitation of Cir. R. 32(c) because it contains 6,857 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Cir. R. 32(b) for a brief produced with a proportionally spaced font using the 2016 version of Microsoft Word in 12-point Times New Roman font.

Dated and signed at Milwaukee, Wisconsin this 5th day of October, 2026.

s / Clint B. Muche
CLINT B. MUCHE